**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ANNE CORR, *et al.*,** | * | |
| | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | **Civil Action No. AW-06-CV-2836** |
| **v.** | * | |
| | * | |
| **JERRY D. WEAST, *et al.*,** | * | |
| | * | |
| | * | |
| | * | |
| **Defendants.** | * | |

**************************************************************************

**MEMORANDUM OPINION**

On October 27, 2006, Plaintiffs Edgar and Nancy Corr (the "Parents") through their

minor child Anne Corr (the "Child") filed a Complaint under the Individuals with Disabilities

Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq.*, against Superintendent Jerry D. Weast and

the Montgomery County Board of Education (collectively, the "School Board"). The Complaint

is an appeal of the May 1, 2006 Decision and Order of Administrative Law Judge Yolanda L.

Curtin ("ALJ"), which denied the Parents request to have the Child placed in a residential

program. The case is now before the Court on Cross Motions for Summary Judgment (Paper

Nos. 11 and 13). Pursuant to the Court's Order of August 27, 2007, the Court conducted an

evidentiary hearing on the cross motions with expert witnesses called by the parties, which was

held on September 10, 2007. The Court has reviewed the entire record, as well as the exhibits

and supplemental papers filed by both parties, and taken into consideration the witness

statements from the evidentiary hearing. For the reasons stated below, the Court will grant

Defendants' Cross Motion for Summary Judgment and deny Plaintiffs' Motion for Summary

Judgment.

1

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Anne Corr is a fifteen-year-old girl with multiple and pervasive disabilities that include autism, mental retardation, and cerebral palsy.  For the past five years, the Child has been educated pursuant to her annual Individualized Education Program ("IEP") developed by committees comprised of education professionals, the Parents, and representatives from the School Board.  Each IEP has included annual goals and short-term objectives in areas critical to the Child's fundamental educational needs, such as self-care skills, communication, personal safety, and socialization.  Everyone involved in the drafting of the annual goals has consistently agreed that each goal was appropriate for the Child in the context of her multiple disabilities and that it was reasonable to assume that each goal would be achieved in the year that it was proposed.  However, since she has arrived at St. Coletta[2] (the current placement), the goals and objectives on the Child's IEPs have remained essentially the same for the past six years, including this past 2006-2007 school year.  The parties agree that the Child has not met any of her educational goals and that she has not made overwhelming progress at her current placement. *ALJ Decision* at 41.

Finally, during the 2005-2006 IEP meetings, the Parents requested that she be placed at the Benedictine School[3] ("Benedictine"), a private, residential placement in which the Child could receive all of her special education services in a 24-hour residential setting.  After the IEP

---

[1] These facts have been incorporated from the Memorandum Opinion from August 27, 2007.

[2] St. Coletta is an eleven-month private day school located in Washington, D.C., that services the educational needs of children with autism and mental retardation.

[3] The Benedictine School is a private, mostly residential educational school located in Ridgely, Maryland, on the Eastern Shore of the state.

team refused to place the Child at Benedictine, the Parents filed an administrative appeal,

requesting placement at Benedictine.  The parties do not dispute that the Child is eligible under

federal and state law to receive a free appropriate public education ("FAPE").  There is also no

dispute that the School Board has complied with the procedural requirements of IDEA.

Therefore, the issues before the ALJ were twofold: 1) whether the Child has made "meaningful

educational progress" at St. Coletta, and 2) whether the Child requires residential placement at

Benedictine.  On May 1, 2006, the ALJ issued her Decision and Order denying the Parents'

request to have the Child placed at Benedictine at the expense of the School Board.  Furthermore,

the ALJ found that the Child had "made meaningful educational progress during her years at St.

Coletta commensurate with her cognitive ability."  *ALJ Decision* at 72.

Thereafter, on May 16, 2007, Plaintiffs filed their motion for summary judgment, to

which Defendants filed their cross motion for summary judgment on June 14, 2007.  After an

initial review of the record in this case, the Court held an evidentiary hearing with expert

witnesses to make an independent assessment as to the ultimate conclusion of "meaningful

progress" by the ALJ.  The Plaintiff presented Dr. Vincent P. Culotta, a neuropsychologist who

serves children, adolescents, and adults with neurobehavioral disorders.  His practice specializes

in attention disorders, learning disabilities, traumatic and mild brain injury, as well as pervasive

developmental disorders.  Also, Plaintiffs presented Michelle R. Davis, owner and director of

ABCs for Life Success, LLC., which is an educational, advocacy, and consulting company that

works with families, schools, and communities to develop skills needed for children in special

education.

The Defendants' experts included Dr. Yvette Baldwin, the Child's school psychologist

3

who has worked with the Child since 2003, who is an expert in the field of school psychology, with an emphasis on autism and severe profound disabled children.  Also, Defendants presented Christie Voltz, an autism resource specialist and program leader at St. Coletta School, who focuses on special education of children with autism.

## STANDARD OF REVIEW

The IDEA provides that a District Court "shall receive the records of the administrative proceedings, shall hear additional evidence …, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. §1415(i)(2)(B).  To determine whether a school board has complied with the provisions of the IDEA, a court must follow the two step inquiry set forth in *Rowley. See Board of Educ. v. Rowley*, 458 U.S. 176 (1982). First, the court must determine if "the State complied with the procedures set forth in the Act." *Id*. at 206*.* Second, the court must evaluate whether "the individualized educational program developed through the Act's procedures [is] reasonably calculated to enable the child to receive educational benefits." *Id.* at 207. The burden of proof of establishing a violation of the IDEA falls on the party challenging the administrative findings, the Plaintiffs. *See Barnett v. Fairfax County Sch. Bd., * 927 F.2d 146, 152 (4th Cir.1991), *cert. denied,* 502 U.S. 859, 112 S.Ct. 175, 116 L.Ed.2d 138 (1991); *King v. Board of Educ. of Allegany County,* 999 F.Supp. 750, 766 (D.Md.1998).

In reviewing IDEA cases, the Fourth Circuit has instructed courts in this Circuit "to make an independent decision based on a preponderance of the evidence, while giving due weight to state administrative proceedings." *Doyle v. Arlington Cty. Sch. Bd.*, 953 F.2d, 100, 103 (4th Cir. 1991).  "If the administrative findings were made in a regular manner and have evidentiary

support, they are to be considered *prima facie* correct.  If the court chooses not to follow the administrative findings, it must explain its departure." *Cavanaugh v. Grasmick*, 75 F.Supp. 2d 446, 457 (D. Md. 1999).  After giving the ALJ's factual findings due weight, the court is free to decide the case based on the preponderance of the evidence.  *See Doyle,* 953 F.2d at 103; *see also* 20 U.S.C. §1415(i)(2)(B).  The Court's bounded independent review of the evidence does not entitle the Court to "substitute [its] own notions of sound educational policy for those of the school authorities." *Rowley*, 458 U.S. at 206.  However, affording the administrative findings "due weight" does not amount to rubber stamping or an "abdication of [the Court's] judicial function." *See Nein v. Greater Clark County Sch. Corp.*, 95 F.Supp. 2d 961, 965 (D. Ind. 2000).

## ANALYSIS

The Court wants to reiterate again, and the parties are aware, that the burden of proof in this case is on the Parents.  This is indeed an onerous burden for the Parents, because, absent some showing of irregularity in the fact-finding process, the ALJ's findings are to be given a presumption of *prima facie* correctness. *Cavanaugh,* 75 F.Supp. 2d at 457.  There is no evidence before the Court that suggests or implies that anything but a regular fact-finding process took place.  However, the unique circumstances of this case compelled the Court to look deeper into the ALJ's findings.  As a result, pursuant to the Court's obligation to independently review whether the School Board has complied with IDEA, an additional hearing was conducted to hear additional evidence.  "Whether to allow additional evidence under §1415(E)(2) 'must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial *de novo*.'" *Avjian v. Weast*, 2007 U.S.App.

LEXIS 16689, *8-9 (4th Cir. 2007) (citing *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 791 (1st Cir. 1984)).

Despite the lengthy and comprehensive findings of facts by the ALJ, the Court found quite troubling the ultimate conclusion of the ALJ.  To reiterate, the ALJ stated that The Child "has made meaningful educational progress during her years at St. Coletta commensurate with her cognitive ability." *ALJ* at 72.  This statement, coupled with the fact that the Child has not achieved any of her IEP goals in the last six years, gave the Court serious concern.  As a result, the Court allowed both parties to present witnesses to address three main issues.  The first issue related to the IEP goals: their proper assessment, reasons and/or explanations as to why the Child has not met any of them in the past six years, and the possibility of her achieving the goals even with her disabilities and cognitive limitations.  The second issue focused on the specific program at St. Coletta and whether the program there was designed to ensure that the skills acquired through the program are transferable to other environments.  The last issue focused on the the Child's brief four-week stay at the Benedictine School and the potential impact of that residential facility having on the Child's attainment or non-attainment of necessary goals.

After the first reading of the ALJ's conclusions and findings of facts, the Court was not convinced that "meaningful educational progress" had been made.  The experts that were presented by both parties helped to clarify exactly what was meant by that statement. The summaries of the witnesses' testimony are as followed:

Dr. Vincent Culotta, Plaintiffs' expert, testified that the goals designed for the Child are achievable, but the problem at St. Coletta is in the implementation and transfer of skills outside

of St. Coletta.  He further stated that the Child is capable of learning and that the inconsistency in the program is preventing her from generalizing her skills to other environments.

Michelle Davis, Plaintiffs' second expert, has worked with the Child and her Parents since 2005 and has taken part in creating the IEP goals for the Child.  Her testimony highlighted that in her opinion, the Child required a residential placement, such as the Benedictine school, since it would provide around the clock support for her to be able to generalize her skills.  She did not feel that there was enough consistency or reinforcement in the program at St. Coletta.

Dr. Yvette Baldwin, Defendants' expert, has worked with the Child for the past five years in the Montgomery County Public School System.  She testified that the Child has made progress since she has been at St. Coletta and that her behaviors do not exist to the same extent as they did when she began.  She also stated that her three disabilities coexisting as well as her being a teenager affect her rate of learning and explain why she has not made more progress towards her goals.  Because of the unpredictability of her profile, achievement of goals was a more realistic expectation than absolute mastery.  She commented that she is familiar with the Benedictine School, but that program is more restrictive and does not provide enough exposure in the community like St. Coletta.

Christie Voltz, Defendants' second expert, has worked at St. Coletta for the past eleven years and has worked specifically with the Child since 2002.  She said that the Child's goals have focused on the same areas, such as toileting, behavior, and communication, but the contents of each goal change.  For example, each goal consists of certain objectives that must be met in order to master a goal, and the Child has been meeting some, if not most, of the objectives for each goal.  For one goal, she had achieved eight of nine objectives.  As a result, she testified that there

7

has been much progress since the Child started at St. Coletta, despite the fact that a particular goal had not been mastered. Ms. Voltz also testified that the Child can make significant progress towards her goals while at St. Coletta, and that the community-based program would provide her the support she needed. Although she was not familiar with the Benedictine School, the residential facility there would be too limiting and restrictive.

The Court was impressed with all the witnesses who testified at the hearing to assist the Court in its decision-making. From the extra testimony that was heard, the Court is convinced that there has been some educational progress at St. Coletta. Defendants' experts, who have worked with the Child for the past several years, have convinced the Court that the Child has made progress while at St. Coletta. While her progress may not be to the extent of the Parents' expectation, there has been progress. The Child has been meeting some of the objectives outlined in her IEP goals, and this by itself is progress.

In order to go against the ALJ, this Court would have to articulate reasons why it should deviate from her ruling and thorough discussion of the case. The Court simply cannot do that. Having reviewed the entire record and having considered the clarifying evidence presented at the evidentiary hearing, the Court is unable to articulate cogent reasons to set aside the pertinent findings by the ALJ. Although none of the IEP goals were met, mastery of goals is not determinative in finding that a child has received educational  benefit. *Rowley,* 458 U.S. at 198; *Cavanaugh*, 75 F.Supp. 2d at 446. Also, the Court believes that the ALJ had an ample basis for her findings and conclusions, which reflect the completeness of her decision. The Court, therefore, concludes that the Parents have failed to meet their burden in establishing that the IEP for the 2005-2006 academic year was not reasonably calculated to enable the Child to receive an

8

educational benefit.  The IEP proposed by the Montgomery County Public Schools was designed to offer the Child a FAPE. *Bd. of Educ. v. Rowley*, 458 U.S. 176 (1982).

This Court strongly encourages all parties involved to reassess the goals, objectives, and purposes behind each IEP that is designed to address the Child's specific needs.  The Court hopes that all the necessary care, support, and resources will be focused on the Child in order that she can attain some level of independence and lead as fulfilling a life as she can, considering that her remaining time in the Montgomery County Public School system is limited.  The Court trusts that everyone involved is acting in the Child's best interest, and the Court expects that will be the highest priority.

## CONCLUSION

After thorough review of the entire record and hearing additional testimony from the expert witnesses, this Court finds that the conclusions of the ALJ were supported by the record and the facts in evidence, and the Plaintiffs have not produced any evidence which would unseat the ALJ's conclusion, made "in a regular manner [with] evidentiary support." *Doyle,* 953 F.2d at 103.  Therefore, the Court will GRANT Defendants' Motion for Summary Judgment (Paper No. 13).  An Order consistent with this Memorandum Opinion will follow.

| | |
|---|---|
| September 21, 2007 | /s/ |
| Date | Alexander Williams, Jr. |
| | United States District Judge |